Kraig J. Marton (003816)
David N. Farren (007384)
**JABURG & WILK, P.C.**
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
kjm@jaburgwilk.com
dnf@jaburgwilk.com
(602) 248-1000

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Ronald Brian Calhoun, Jr. | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Arizona Public Service Company, an Arizona Corporation, and Pinnacle West Capital Corporation, an Arizona Corporation, | |
| Defendants. | |

Plaintiff Ronald Brian Calhoun alleges:

**PARTIES AND JURISDICTION**

1. Plaintiff Ronald Brian Calhoun is a resident of Coconino County, Arizona.

2. Defendant Arizona Public Service Company ("APS") is and at all material times has been an Arizona corporation and Plaintiff's employer.

3. Defendant Pinnacle West Capital Corporation ("Pinnacle West") is and at all material times has been an Arizona corporation and, upon information and belief, the parent company of Defendant APS. Pinnacle West is and at all material times has been Plaintiff's employer or dual employer for purposes of this action.

4. This Court has subject matter jurisdiction of the federal claims alleged in this Complaint pursuant to the Fair Labor Standards Act, 29 U.S.C.A. §216(b).

16731-1/DNF/DNF/1026951_v1

5. This Court has supplemental subject matter jurisdiction of the state law claims alleged in this Complaint under 28 U.S.C. §1367.

6. All Defendants currently are residents and citizens of, maintain their principal place of business in and/or are doing business in the District of Arizona, and a substantial part of the events, acts or omissions giving rise to the claims alleged in this Complaint occurred within the District of Arizona. As such, jurisdiction over the parties and venue are proper in the District of Arizona under 28 U.S.C. §1391 and/or 28 U.S.C.A. §1400(a).

## **DEMAND FOR JURY TRIAL**

7. Plaintiff demands a trial by jury on all issues.

## I. FACTS AND BACKGROUND

### Plaintiff's Work History

8. Plaintiff began working for APS in June 1997 as a "Computer Engineer II" and, in that capacity, was made responsible for maintaining, repairing and upgrading the computer hardware and printers and network equipment throughout Northern Arizona.

9. Upon information and belief, based on the job description and/or actual work performed by Plaintiff as a "Computer Engineer II," and despite knowing that doing so was contrary to law, in 1997 APS wrongly classified him and others in similar positions as exempt employees who were not subject to the overtime pay requirements imposed by the Fair Labor Standards Act of 1938, 29 U.S.C. §201 *et seq*. (the "FLSA").

10. In 1999, because he had proven himself to be a very competent and valuable employee, Plaintiff was promoted by APS to the position of "IT Technician Analyst III" and, in that capacity, did substantially the same work he had been doing as a "Computer Engineer II."

11. Upon information and belief, based on the job description and/or actual work performed by Plaintiff as a "IT Technician Analyst III," and despite knowing that doing so was contrary to law, APS continued to wrongly classify him and, upon information and belief, other employees in similar positions as exempt employees who were not subject to the overtime pay requirements of the FLSA.

2

12. In 2002, Plaintiff was voted one of APS's Most Valuable Players by his colleagues and co-workers in recognition of his work ethic and the good job he was doing as an APS employee. He received a certificate and was recognized at center court at a Sun's game and presented with a Sun's jersey with his name on to commemorate the honor.

13. In 2004, Plaintiff received the Living the Vision award from his co-workers in the APS Phoenix engineering group in further recognition of his work ethic and the good job he was doing as an APS employee.

14. At or about the same time in 2004, Plaintiff received another promotion. His work responsibilities were increased – that is, his responsibilities doing computer field services were combined with the work previously done by field services communications technicians – he began working for a new supervisor, Stacy Wright, and he was given the job title of "Communications Engineer III."

15. Although the new responsibilities and actual work performed by Plaintiff in his new position as a "Communications Engineer III" were substantially the same as the work he had performed as a "Computer Engineer II" and an "IT Technician Analyst III," APS properly re-classified him as non-exempt employee, as he should have been since the beginning of his employment in 1997, subject to the overtime pay requirements of the FLSA – i.e., he was paid overtime wages at the rate of 1.5 times his hourly rate of pay.

16. At or about the same time, when he was promoted to his new position as a "Communications Engineer III" in 2004, APS realized that Plaintiff had not been paid overtime wages at the rate of 1.5 times his hourly rate of pay for his work as an "IT Technician Analyst III" and properly paid him two years of unpaid overtime retroactively.

17. At or about the same time, APS conceded that it had previously improperly classified Plaintiff as an exempt employee in his position as an "IT Technician Analyst III" and agreed to pay him, retroactively, overtime wages at the rate of 1.5 times his hourly rate of pay for all of the overtime work he had performed during the past two (2) years. APS thus avoided a DOL investigation of this issue.

3

18. At or about the same time, APS made the same concession to Plaintiff's counterpart, the "IT Technician Analyst III" for Southern Arizona, and agreed to pay him, retroactively, overtime wages at the rate of 1.5 times his hourly rate of pay for all of the overtime work he had performed during the past two (2) years.  Again, APS thus avoided a DOL investigation of this issue.

19. Upon information and belief, based on these concessions and upon admissions and other instances where APS has misclassified its non-exempt employees as exempt, and other facts that may be revealed through discovery, Plaintiff alleges that, from the beginning of his employment in 1997 through the date of APS's concession of the issue in 2004, APS had knowingly, willfully and wrongfully misclassified the various positions he had held with the company as exempt as a means to evade the overtime pay requirements of the FLSA.

20. In 2007, Plaintiff was promoted by APS to the position of "IS Field Services Technician Senior," further recognition of his work ethic and the good job he was doing as an APS employee.  He continued to do the field work he had been doing as an "IT Technician Analyst III" and continued to be classified as a non-exempt employee.

21. In July 2009, Plaintiff was promoted by APS to the position of "IS Field Services North Lead" as further recognition of his work ethic and the good job he was doing as an APS employee. Although this was a newly created position within APS that, as the title suggests, involved some leadership responsibility, Plaintiff primarily continued to do the field work he had been doing as an "IS Field Services Technician Senior."

22. Despite being promoted to the newly created position of "IS Field Services North Lead" and the fact that Plaintiff primarily continued to do the field work he had been doing before, APS classified him as an exempt employee who is not subject to the overtime pay requirements of the FLSA.

23. Despite being promoted to the newly-created position of "IS Field Services North Lead," and although this position does involve some leadership responsibility,

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Plaintiff, as before, was and remained a non-exempt employee subject to the overtime pay requirements of the FLSA.

24. Upon information and belief, the job description written by APS for the newly-created position of "IS Field Services North Lead" was misleading and did not accurately reflect the work that Plaintiff was actually doing, including concurrent duties as "IS Field Services North Lead" and "IS Field Services Technician Senior." The job description does correctly state, however, that overtime work, including emergency overtime work, to support the APS system 24/7 was an expected part of the job.

25. Specifically, the only leadership responsibility acquired by Plaintiff upon being promoted to the position of "IS Field Services North Lead" was to check in with other APS computer and communications field technicians by telephone call at the beginning of each work day to make sure that work scheduled for that day would be done by available field employees in a coordinated and efficient manner.

26. Notwithstanding these work day morning telephone calls, the majority of the actual and relatively more important work Plaintiff performed as APS's "IS Field Services North Lead," and his primary responsibilities, remained the same field work he had been doing as an "IS Field Services Technician Senior," and before that, as an "IT Technician Analyst III" and a "Computer Engineer II." (Copies of Plaintiff's 2009, 2010 and 2011 annual "APTMS" employee performance reviews, attached hereto as Exhibits B, C and D, respectively, illustrate that the primary actual work he performed as APS's "IS Field Services North Lead" was the same field work he had been doing in his previous positions with the company).

27. The primary and actual work Plaintiff performed as APS's "IS Field Services North Lead," as in his prior positions with the company, involved manual labor and did not involve responsibilities for hiring, firing or promoting subordinate employees, did not free him from being supervised by his superiors, did not require that he exercise discretion and independent judgment with regard to most aspects of the job.

5

28. Plaintiff has always been paid an hourly wage, rather than a fixed salary, in all the positions he has held during the past 15 years he has been employed by APS.

29. Plaintiff has always been expected to work as a requirement of his job, and sometimes ordered to work, overtime hours – that is, hours in excess of 40 hours during a work week – during the past 15 years he has been employed by APS.

**Plaintiff's Protests About Being Reclassified as an Exempt Employee**

30. Upon learning that his new position as "IS Field Services North Lead" was being classified as exempt. Plaintiff protested the matter to APS management. APS management acknowledged at the time that his actual work as "IS Field Services North Lead" included substantial duties and work that should be classified as non-exempt, but, upon information and belief, knowingly and willfully refused to properly classify Plaintiff's new position as non-exempt to save money and evade the overtime pay requirements of the FLSA.  (See Exs. B, C and D hereto).

31. Plaintiff persisted in his effort to correct the classification of his position given the actual work he was expected to perform and did perform as "IS Field Services North Lead," and, because he agreed that Plaintiff's position should be classified as non-exempt, in July 2009 APS Business Manager Scott Griffith authorized and agreed to pay Plaintiff for overtime work, as required by the FLSA.

32. Plaintiff was properly paid for all overtime work he performed in his position as "IS Field Services North Lead" from July 2009, when he was promoted to that position, until March 2010.

33. In March 2010, APS manager Stacy Wright directed Scott Griffith to reverse the company's decision to pay Plaintiff overtime pay, as required by the FLSA, but to instead pay him what he called "straight time" overtime pay. So-called "straight time" overtime pay is not recognized or permitted by the FLSA.

34. Upon information and belief, based on the earlier concessions and admissions made by APS, other instances where APS has misclassified its non-exempt employees as exempt, the fact that Plaintiff had been paid overtime pay in accordance with the FLSA

6

during the nine months prior to the March 2010, and other facts that may be revealed through discovery, Plaintiff alleges that APS knowingly, willfully and wrongfully re-reclassified him as an exempt employee in March 2010 as a means to evade the overtime pay requirements of the FLSA. (See Exs. B, C and D hereto).

35. In July 2010, Plaintiff formally and informally protested his reclassification to an exempt employee status to APS management and the Arizona Department of Labor ("DOL"). Notwithstanding the company's actions, he continued to complain submitted a request for some 30 hours of unpaid overtime pay.

36. All of Plaintiff's APTMS reviews since he had begun his employment with APS in 1997 had been good to excellent, as had been evidenced by the Most Valuable Player and Living the Vision awards he had received in recognition of his work ethic and performance, until he began protesting his reclassification to an exempt employee without overtime pay benefits.

### APS's Retaliation Against Plaintiff for Protesting

37. On or about August 19, 2010, in retaliation for Plaintiff's protests and his submission of a request for payment of "unapproved" overtime pay, APS demoted him from his "IS Field Services North Lead" position to that of a "Technician III." (A copy of the retaliatory Employee Action Document imposing this discipline is attached hereto as Exhibit E).

38. Plaintiff protested the demotion via APS's three-step disciplinary process. (A copy of the APS three-step disciplinary process is attached hereto as Exhibit F).

39. Plaintiff's protest and appeal of the threatened demotion was denied at Steps I and II of the disciplinary process. (Copies of documentation of these denials at Steps I and II of the disciplinary process are attached hereto as Exhibits G and H, respectively).

40. At Step III of the disciplinary process, by letter dated November 3, 2010, Plaintiff was informed that APS made its decision to demote him final, but, apparently to hedge its bets and cover its tracks, paid him the $1,743.67 in overtime pay that had been deducted from his August 30, 2010, paycheck. (Copies of the documentation of Step III

7

1 and the November 3, 2010, letter denying his appeal are attached as <u>Exhibits I and J</u>,
2 respectively).

3      41. For the first time in his 15 year career with APS, Plaintiff received a negative
4 APTMS 2010 year-end performance review, followed by more negative reviews since
5 then, thus manufacturing a pretext to justify his demotion and setting him up to be further
6 demoted or fired for cause.  (See Exs. C and D hereto).

7      42. The negative APTMS 2010 performance reviews Plaintiff has received since
8 the APTMS 2010 year-end performance review have been the direct result of, and in
9 retaliation for, Plaintiff's continuing protests to APS, request for "unapproved" overtime
10 pay and complaint made to the Arizona DOL about the foregoing overtime issues.

11      43. APS's actions are in willful violation of the FLSA, have caused him financial
12 losses and immeasurable damage to his status, prestige and reputation in the communities
13 where he lives and works, and have effected ended his 15-year career with the company.

**Plaintiff's Damages**

15      44. Plaintiff has suffered a loss of wages that were and remain due to him as the
16 result of APS's knowing and willful failure and refusal to properly classify him as a non-
17 exempt employee and to fully compensate him at the statutory rate of 1.5 times his regular
18 hourly rate ("FLSA Overtime Rate") for all overtime work he performed during the three-
19 (3) year period preceding the filing of this Complaint.

20      45. The overtime work Plaintiff performed during the three-(3) years preceding the
21 filing of this Complaint for which he is owed overtime pay include, without limitation, the
22 following payments due to him for the period March 1, 2010, through August 1, 2010,
23 which are calculated as the difference between the "straight time" overtime pay that was
24 paid to him and the correct FLSA Overtime Rate:

- $873.95 April 16 to April 30, 2010;
- $566.18 May 1 to May 15, 2010;
- $418.19 May 16 to May 30, 2010;
- $543.53 June 1 to June 15, 2010;

8

16731-1/DNF/DNF/1026951_v1

- $486.91 June 16 to June 30, 2010;
- $226.97 July 1 to July 15, 2010;

Total: $3,080.01

(Time records supporting these calculations are attached as <u>Exhibit A</u> to this Complaint.) Pursuant to 29 U.S.C. §216(b), Plaintiff is entitled to be paid statutory damages of double that amount for total statutory liquidated damages of <u>$6,160.02</u>.

46. In addition, Plaintiff has suffered general, compensatory and special damages which include, without limitation, the loss in base pay wages he has sustained, and will continue to sustain, as the result of his demotion from the position of "IS Field Services North Lead" to "Technician III" he received on August 19, 2010, calculated at a loss of four percent (4%) of his previous base pay = <u>$3,768.48 per year</u>, which losses continue to accrue at that rate.

47. In addition, Plaintiff has suffered emotional distress, pain and suffering as well as a loss in social status, prestige and reputation in the community where he lives and works as the result of his humiliating, but unjustified demotion. Plaintiff has also suffered what amounts to the loss of his 15-year career with the company.

48. In addition, pursuant to 29 U.S.C. §216, Plaintiff is entitled to be reinstated to the same of similar position he held prior to being demoted from his position as "IS Field Services North Lead" and, retroactively, all back pay and other benefits he would have earned in that or a similar position if not for the demotion.

49. In addition, because the conduct of APS alleged herein was willful, egregious and in complete and utter disregard of Plaintiff's rights under the FLSA while fueled by greed and avarice, Plaintiff is entitled to an award of punitive damages in an appropriate amount to deter such conduct on the part of APS and other companies who may attempt to flaunt the law for personal gain at the expense of their employees.

50. Pursuant to A.R.S. §12-341, A.R.S. §12-341.01(A) and/or 29 U.S.C. §216(b), Plaintiff is entitled to an award of his costs and attorney fees he has incurred in brining this action.

9

16731-1/DNF/DNF/1026951_v1

## COUNT ONE
### (FLSA Overtime Pay Claim)

51. Plaintiff incorporates all prior paragraphs as if fully set forth herein by this reference.

52. As alleged, Defendants violated 29 U.S.C. §216 by failing and refusing to pay Plaintiff the overtime pay due to him at the FLSA Overtime Rate.

53. As also alleged, upon information and belief and based on the concessions and admissions made by APS, other instances where APS has misclassified its non-exempt employees as exempt, the fact that Plaintiff had been properly paid overtime in the nine months prior to the March 2010 decision to cease paying him overtime, and other facts that may be revealed through discovery, Defendants' failure and refusal to pay Plaintiff the overtime pay due to him at the FLSA was knowing, willful and wrongful.

54. As a direct and proximate result of Defendants' knowing, willful and wrongful violation of 29 U.S.C. §216, Plaintiff is entitled to liquidated damages in the amount of all overtime pay withheld from him for all overtime work he performed during the three-(3) year period preceding the filing of this Complaint, including, without limitation, the liquidated damages amount of $6,160.02 set forth herein.

55. Because Defendants' conduct was willful, egregious and in complete and utter disregard of Plaintiff's rights under the FLSA while fueled by greed and avarice, Plaintiff is entitled to an award of punitive damages in an appropriate amount to deter such conduct on the part of Defendants and other companies who may attempt to flaunt the law for personal gain at the expense of their employees.

WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, as follows:

A. For unpaid overtime and benefits in the approximate amount of $3,080.01;

B. For statutory liquidated damages in an amount to be proved at trial, but not less than $6,162.02;

C. For an award of punitive damages in an amount to be established at trial;

10

16731-1/DNF/DNF/1026951_v1

D.  For an award of Plaintiff's attorney fees incurred herein pursuant to A.R.S. §12-341.01(A) and/or 29 U.S.C. §216(b);

E.  For an award of Plaintiff's costs incurred herein; and

F.  For such other and further equitable relief as the Court deems just and proper.

## COUNT TWO

(FLSA Retaliation Claim)

56. Plaintiff incorporates all prior paragraphs as if fully set forth herein by this reference.

57. Defendants retaliated against Plaintiff in response to Plaintiff's complaints made to APS and the Arizona DOL and refusal to stop protesting his revamped exempt employee status and loss of overtime pay benefits and request for "unapproved" overtime pay by demoting him from his former position of "IS Field Services North Lead" to that of a "Technician III" with commensurate cut in base pay.

58. As also alleged, Defendants retaliated against Plaintiff in response to Plaintiff's complaints made to APS and the Arizona DOL and refusal to stop complaining about his revamped exempt employee status, loss of overtime pay benefits and demotion from his "IS Field Services North Lead" position to that of a "Technician III," by giving him negative APTMS performance reviews for the first time in his 15 year career with APS, thus manufacturing a pretext to justify his demotion and setting him up to be further demoted or fired for cause.

59. Defendants' acts of retaliation violated 29 U.S.C. §215(a)(3).

60. As a direct and proximate result of Defendants' retaliation against Plaintiff, Plaintiff is entitled to damages in amounts that will adequately compensate him for: (a) the loss in base pay wages he has sustained, and will continue to sustain, as the result of the demotion he received on August 19, 2010, calculated at a loss of four percent (4%) of his previous base pay = $3,768.48 per year, which losses continue to accrue at that rate; (b) the loss of status, prestige and reputation in the community and areas where he lives

16731-1/DNF/DNF/1026951_v1

and works; (c) his emotional distress, pain and suffering; and (d) such other losses and damages that may be proved at trial.

61. Because Defendants' conduct was willful, egregious and in complete and utter disregard of Plaintiff's rights under the FLSA while fueled by greed and avarice, Plaintiff is entitled to an award of punitive damages in an appropriate amount to deter such conduct on the part of Defendants and other companies who may attempt to flaunt the law for personal gain at the expense of their employees.

WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, as follows:

A. For Plaintiff's general, compensatory and special damages in amounts to be proved at trial;

B. For reinstatement to the same or similar position Plaintiff held prior to being demoted from his position as "IS Field Services North Lead" and, retroactively, all back pay and other benefits he would have earned in that or a similar position if not for the demotion;

C. For an award of punitive damages in an amount to be established at trial;

D. For an award of Plaintiff's attorney fees incurred herein pursuant to A.R.S. §12-341.01(A) and/or 29 U.S.C. §216(b);

E. For an award of Plaintiff's costs incurred herein; and

F. For such other and further equitable relief as the Court deems just and proper.

DATED this 2nd day of November, 2012.

**JABURG & WILK, P.C.**

 /s/ David N. Farren
Kraig J. Marton
David N. Farren
Attorneys for Plaintiff

16731-1/DNF/DNF/1026951_v1